UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GLEN AND DIANE MILLER,

    Debtors,
_____/

SPRINGING ACRES, INC.,                       Case No. 06-11951
                                                      (Bankruptcy No. 04-72048 and
    Appellant,                                             Adv. No. 05-05265)

v.

EASTERN MICHIGAN BANK,
GLEN MILLER, and DIANE MILLER,

    Appellees.
_____/

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on October 27, 2006.

Present: THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

**Opinion and Order**

This case comes to this Court as an appeal of decisions by the United States Bankruptcy Court for the Eastern District of Michigan, the Honorable Marci B. McIvor presiding, granting a motion for summary judgment filed by Eastern Michigan Bank and denying a motion for reconsideration filed by Springing Acres, Inc. In her decisions, Judge McIvor concluded that certain "leases" for dairy cows between Springing Acres and the Debtors, Glen and Diane Miller, were secured transactions rather than "true

leases" and that Springing Acres' security interest in the cows and their milk were junior to Eastern Michigan Bank's security interest in the same goods.

## Procedural Background

On November 11, 2004, Glen and Diane Miller ("Debtors") filed for Chapter 7 Bankruptcy. Eastern Michigan Bank ("Bank") filed an adversary proceeding, claiming an interest in "milk checks" held by the Bankruptcy Trustee that had been received from the Dairy Farmers of America, constituting proceeds from the sale of milk produced by the Debtor's dairy operation. The Bank thereafter filed a motion for summary judgment claiming that it holds a first in priority properly perfected security interest in the proceeds of the farm products of the Debtors' dairy farm and that it therefore is entitled to the milk checks received from the Dairy Farmers of America. (Doc. 30.)

In its motion, the Bank argued that "Dairy Cow Lease[s]" between the Debtors and Springing Acres, dated November 8, 2003 and May 12, 2004, actually were disguised financing agreements rather than "true leases," pursuant to which Springing Acres only acquired a purchase-money security interest in the cows on the Debtors' farm, the cows' milk, and the proceeds from that milk. The Bank further argued that Springing Acres' security interest was not properly perfected as Springing Acres' UCC financing statements did not accurately identify the collateral. The Bank also argued that, even if perfected, Springing Acres' security interest was not perfected in such a way to give it priority over the Bank's "first in time security interest in all farm products now owned or hereafter acquired" by Debtors. To support this statement, the Bank provided the

affidavit of Sidney A. Mattson, a Loan Officer, stating that Springing Acres only sent the Bank an unfiled UCC financing statement "describing a leasehold interest in 52 head of cattle" but that "the UCC [f]inancing [s]tatement does not indicate that Springing Acre's [sic] is taking a purchase money security interest in the 52 head of cattle." (Doc. 30, Ex. H.)

Springing Acres filed an objection to the Bank's motion for summary judgment in which it admitted many of the Bank's allegations, including the allegation that Springing Acres entered into several lease agreements with the Debtors. (Doc. 42 ¶ 8.) Springing Acres, however, denied that it had an obligation to give the Bank notice of the agreements and that such notice was not properly given. (*Id*. & ¶ 19.) Springing Acres asserted that it holds a senior or first priority interest in the Debtors' farm products or proceeds. (*Id*. ¶¶ 16 & 17.) Springing Acres further asserted that "[t]he leases identified by movant were properly perfected by UCC statements and were continuations of prior filings that precede Eastern Michigan Bank's interest or perfection." (*Id*. ¶ 18.)

Although it appears from the Bankruptcy Court docket that Judge McIvor held a hearing on the Bank's motion for summary judgment, the record submitted to this Court does not contain a transcript of such a hearing. The record does include, however, a transcript of Judge McIvor's ruling in which she addressed what appears to be the primary argument Springing Acres presented in response to the Bank's motion for summary judgment– that being that Springing Acres' "security interest" arose from its "finance leases" with the Debtors covering the collateral in the Debtors' possession,

3

which is, to a large extent, the same collateral covered by the Bank's security agreement. (3/21/06 Tr. at 4)

In her oral ruling, Judge McIvor stated that Springing Acres' "so-called leases of the cows are actually disguised purchase and financing statements which granted Springing Acres a purchase-money security interest in the cows." (*Id*. at 6.) Judge McIvor further found that Springing Acres failed to timely notify the Bank of its purchase- money security interest in the cows and "therefore Eastern Michigan Bank's security interest has priority." (*Id*. at 9.) The Bankruptcy Court specifically found that Michigan Compiled Law Section 440.9324(4) requires a purchase-money secured party to send authenticated notification to a holder of a conflicting security interest and therefore, ". . . in order for Springing Acres' purchase-money security interest to have priority over Eastern Michigan Bank's security interest, Springing Acres was required to send authenticated notification to Eastern Michigan Bank. Instead, . . . Eastern Michigan Bank only received a copy of an unfiled UCC financing statement showing a security interest in 52 head of cattle, . . ." (*Id*. at 10-11.) Concluding that Springing Acres' notice was defective under Section 440.9324(4), Judge McIvor found that Springing Acres did not perfect its purchase-money security interest "in such a way to give it an interest senior to Eastern Michigan Bank's." (*Id*. at 11.)

Judge McIvor acknowledged that Springing Acres argued that its interests were properly perfected by UCC statements and were continuations of prior filings preceding the Bank's interests or perfection. (*Id*. at 11-12.) However, Judge McIvor found no

4

evidence to support Springing Acres' argument:

> Springing Acres has not provided any evidence to support this allegation and, in any case, the manner in which the documents were supplied to Eastern Michigan Bank does not comport with the authentication requirements of the statute, and therefore, the notification requirements are defective under the law.

(*Id.* at 12.)  The Bankruptcy Court then granted the Bank's motion for summary judgment, ruling that the Bank had priority over any security interest held by Springing Acres.  (*Id.*)  Judge McIvor issued a written order granting the Bank's motion for summary judgment on March 23, 2006.  (Doc. 54.)

On March 31, 2006, Springing Acres filed a motion for reconsideration and brief in support of its motion.  (Docs. 58 & 59.)  In its motion and brief, Springing Acres essentially argued that the court's conclusion that the "lease agreements" between it and the Debtors were "disguised financing agreements" was in error.  Springing Acres contended that a "[d]etermination that the leases in question are not Statutory Finance Leases requires an assessment of fact beyond the allowable scope of a motion for summary judgment."  (Doc. 58 ¶ 10.)  Springing Acres therefore argued that "the Court's finding that the subject leases were 'disguised financing statements' and that Springing Acres held no priority or other practical interest in the remaining livestock was error."  (*Id.* ¶ 12.)

Springing Acres' motion for reconsideration, which "requests the Court reverse it's [sic] ruling," does not challenge the Bankruptcy Court's finding that Springing Acres

failed to perfect its security interest because it failed to comply with the requirements of Michigan's UCC, particularly due to its failure to send an authenticated notification to the Bank pursuant to UCC Section 440.9324(4). Springing Acres also did not challenge Judge McIvor's conclusion that "[b]ecause Springing Acres' notice is defective under the Uniform Commercial Code, Springing Acres did not perfect its purchase-money security interest in such a way to give it an interest senior to Eastern Michigan Bank." (*See* 3/21/06 Tr. at 11) Accordingly, Springing Acres never argued in its motion for reconsideration that its security interest was perfected by other filings. In fact, Springing Acres' only mention of any UCC filing in its motion for reconsideration was its statement that "Springing Acres filed UCC-1 and UCC-3 statements to provide additional notice of its leases, however, it was not required to do so. Such filing does not change the status of the statutory lease to a purchase agreement as it relates to the title of the property." (Doc. 58 ¶ 6.)

Springing Acres did attach numerous documents to its motion for reconsideration, including UCC financing statements filed prior to the Banks' interest. However, Springing Acres did not identify the relevance, if any, of those documents in its pleadings and only repeated the assertion it made in its objection to the Bank's motion for summary judgment that the financing statements were filed "for the sole purpose of giving better notice of their [sic] lease agreements and not because they [sic] believed they [sic] had only a secured sales transaction." (Doc. 59 at 2; Doc. 42 ¶¶ 9 & 19.) Springing Acres in fact did not respond to Judge McIvor's finding that it failed to provide any evidence to

6

support its argument that its interests were properly perfected by UCC statements and were continuations of prior filings preceding the Bank's interest or perfection. (*See* 3/21/06 Tr. at 11-12.)

On April 14, 2006, Judge McIvor denied Springing Acres' motion for reconsideration. (Doc. 63.) In her order, Judge McIvor reaffirmed her conclusion that the "leases" between Springing Acres and the Debtors were not finance leases but rather disguised purchase and financing agreements which granted Springing Acres a purchase-money security interest in the collateral requiring Springing Acres to take the steps set forth in the UCC to perfect its interest. (*Id*. at 3.) The Bankruptcy Court further repeated its prior finding that "Springing Acres did not present any evidence that it adequately perfected its interest as required by statute" even though it "had an opportunity to present evidence, either in response to the Motion for Summary Judgment or as support for its Motion for Reconsideration . . ." (*Id*. & n.4.)

Springing Acres filed the instant appeal on April 24, 2006. Springing Acres thereafter filed a motion on June 23, 2006, seeking to expand the Bankruptcy Court record in order to include a document referred to as an "in lieu of" continuation statement.

## Springing Acres' Appeal and Analysis

On appeal, Springing Acres appears to have abandoned its previous argument that its "leases" with the Debtors were finance leases.[1] Rather, Springing Acres attempts to

---

[1] It does not appear that Springing Acres even is challenging Judge McIvor's ruling that the leases were financing statements requiring perfection in accordance with the UCC. In any

establish, for the first time, the steps it took to protect its security interest and that those steps were sufficient to give it priority over the Bank. In response, the Bank spends very little time, if any, refuting these specifics. Instead, the Bank argues that Springing Acres cannot present its arguments and the evidence in support of its arguments for the first time on appeal. Springing Acres argues in reply that it properly preserved its current arguments in the Bankruptcy Court.

In this Court's opinion, the issues Springing Acres raises on appeal were not only not "preserved" in the Bankruptcy Court but, as the preceding section of this opinion indicates, they were not even addressed to the Bankruptcy Court. To establish that it raised its arguments in the Bankruptcy Court, Springing Acres asserts that it stated in its motion for reconsideration: "For each lease agreement, Springing Acres also filed UCC-1 financing statements, first in the local county offices and later when state-wide recording was instituted, with the Michigan Secretary of State." *See* Reply at 1 (quoting Doc. 59 at 2). Springing Acres, however, fails to include the rest of the pertinent paragraph in which it set forth that it filed the UCC financing statements "for the sole purpose of giving better notice of their [sic] lease agreements and not because they [sic] believe they [sic] had only a secured sales transaction." (Doc. 59 at 2.) In this Court's opinion, Springing Acres' assertion in its motion for reconsideration, when read in its entirety, would not

---

event, this Court agrees with the Bankruptcy Court that the leases actually were financing statements requiring Springing Acres to take the appropriate steps necessary to perfect its security interest.

alert the Bankruptcy Court to the fact that it was contending that these UCC financing statements were filed to perfect a security interest; nor would Springing Acres' assertion have alerted the Bankruptcy Court as to why it believed its statements were properly filed and gave it priority over the Bank with respect to the Debtor's collateral.  (*Id*. at 3 n.4.) Springing Acres contends that, in granting the Bank's motion for summary judgment, Judge McIvor found that Springing Acres "argued that it held a prior perfected security interest and then erroneously held that [Springing Acres] failed to attach any of the necessary documents to support its claim."  *See* Reply at 2.  With respect to its objection to the Bank's motion for summary judgment, Springing Acres is entirely correct that Judge McIvor acknowledged its argument that it held a prior perfected security interest. However as Springing Acres offered no documents in support of its objection, Judge McIvor did not err in further concluding that Springing Acres failed to attach any documents to support its claim.

While it is true that Springing Acres attached numerous documents to its motion for reconsideration, as this Court previously pointed out, there is nothing in Springing Acres' *motion for its reconsideration* or in its brief in support of the motion which raised the claim now being made on appeal– i.e. that the filings it made complied with the UCC's requirements and therefore perfected Springing Acres' security interest and gave it priority over the Bank's claims.  Not only did Springing Acres not refer in its motion for reconsideration to the documents that it now asserts support its claim that it complied with the UCC's filing requirements in perfecting its security interest, but it never even

9

made that argument. Moreover, because the documents on which Springing Acres now relies only were attached to its motion for reconsideration, the Bank had no opportunity to address the documents because the Local Rules for the Bankruptcy Court prohibit a response to a motion for reconsideration absent an order by the court. E.D. Mich. Bankruptcy Ct. L.R. 90.24-1.

A party has an obligation to clearly set forth the arguments that it wishes the court to consider, as well as to specifically refer to and identify any documents or exhibits upon which it is relying. Springing Acres did not clearly set forth before the Bankruptcy Court the argument it now asserts on appeal and it clearly did not refer the Bankruptcy Court to any exhibits supporting its argument. While Springing Acres may have attached numerous documents to its motion for reconsideration, it is not the function of the court to go through all the documents attached to a party's pleading– to which there has been no specific reference– and evaluate their significance, if any, to the issues in the case.

## Conclusion

For the reasons set forth above, the Court concludes that Springing Acres raises issues on appeal which it failed to raise in the Bankruptcy Court. Because "[o]rdinarily an appellate court does not give consideration to issues not raised below," *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S. Ct. 719, 721 (1941), and because the Court concludes that Judge McIvor did not err in ruling on the issues presented to her, the Court affirms the Bankruptcy Court's decisions. The Court therefore denies as moot Springing Acres' motion to expand the bankruptcy record.

Accordingly,

**IT IS ORDERED**, that the Bankruptcy Court's orders granting Eastern Michigan Bank's motion for summary judgment and denying Springing Acres, Inc.'s motion for reconsideration is **AFFIRMED**;

**IT IS FURTHER ORDERED**, that Springing Acres' motion to expand the Bankruptcy Court record is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that Springing Acres' appeal is **DISMISSED WITH PREJUDICE**.

              s/PATRICK J. DUGGAN
              UNITED STATES DISTRICT JUDGE

Copies to:
The Honorable Marci B. McIvor
Robert D. Buechler, Esq.
Richard Kruger, Esq.